UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTIE McFADDEN, et al.,<br><br>    Defendants. | Civil Action No. 6:19-CV-051-CHB<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Christie McFadden's Motion to Dismiss [R. 27]. Defendants Katherine Love, Gary Rose, and Rick Rose have filed responses in opposition [R. 28, 30]. Plaintiff The Prudential Insurance Company of America ("Prudential") has also responded in opposition and filed a Cross-Motion for Relief in Interpleader [R. 29]. For the reasons set forth below, the Court will deny McFadden's Motion to Dismiss and grant Prudential's Cross-Motion for Relief in Interpleader.

### I.  BACKGROUND

Prudential filed this action on February 15, 2019. [R.1] In its Complaint in Interpleader, Prudential alleges the following facts: Prudential issued a group life insurance policy (No. G-43939) to Wal-Mart Stores, Inc. *Id.* ¶ 9. Sherry Rose was an employee of Wal-Mart Stores, Inc. and received life insurance coverage under that policy. *Id.* ¶ 10. On or about April 18, 2018, Sherry Rose designated her daughter, Christie Rose (n/k/a Christie McFadden), as the sole beneficiary of her life insurance benefits under the Prudential policy. *Id.* ¶ 11. On June 19, 2018, Sherry Rose died, and her death was ruled a homicide. *Id.* ¶ 12; *see also* [R. 1-3 (death

certificate)]. Christie McFadden was criminally charged in connection with Sherry Rose's death. [R. 1 ¶ 14]

Citing to Kentucky's "Slayer Statute," KRS § 381.280, Prudential explains that, "[i]f Christie McFadden is determined to have forfeited her right to the Death Benefit pursuant to KRS § 381.280, it would be as if she predeceased [Sherry Rose]." *Id.* ¶¶ 15–16. Under those circumstances, the terms of the policy provide that Sherry Rose's surviving siblings receive her death benefits. *Id.* ¶¶ 17–19. Her surviving siblings include Defendants Rick Rose, Gary Rose, Arlis Rose, and Katherine Love. *Id.* ¶ 20. Rick and Gary Rose have asserted a claim for Sherry Rose's death benefits. *Id.* ¶ 21; *see also* [R 1-4]. At the time of the filing of Prudential's Complaint in Interpleader, there had been no other claims for the death benefits. [R.1 ¶ 22]

Prudential states that it is "ready, willing and able to pay the Death Benefit, plus applicable claim interest, if any, payable in accordance with the terms of the Plan and to whomever this Court shall designate." *Id.* ¶ 23. Prudential therefore asks the Court to (1) require the defendants to answer and "litigate their claims between themselves for the Death Benefit"; (2) require the defendants to settle and adjust the claims and determine who should receive the death benefits, or, if the defendants are unable to do so, resolve those issues; (3) permit Prudential to deposit the death benefits in to the Registry of the Court or as the Court otherwise directs; (4) discharge Prudential from any and all further liability to the defendants related to this policy and/or the death benefits; (5) enjoin the defendants from instituting or prosecuting any proceeding in any state or federal court affecting the policy and/or the death benefits; and (6) award Prudential its attorneys' fees and costs. *Id.* at p. 5.

In response to the Complaint, McFadden, acting pro se, filed a letter with this Court which McFadden described as a "motion/answer." [R. 6] In that letter, McFadden states that she

is incarcerated at the Laurel County Detention Center and in need of a lawyer to represent her in this action. *Id.* at 1. She also argues that she is entitled to her mother's death benefits because her mother modified the policy to name her as the beneficiary, and she has not been charged with or convicted of murder. *Id.* at 1–2. She states that she "wish[es] to contest my moms [sic] brother's claim." *Id.* at 2.

Defendants Rick and Gary Rose filed an Answer and Cross-Claim. [R. 10] In the Answer, they argue that Prudential "is not bound to release any funds to Christie McFadden . . . due to the fact that she is currently incarcerated and charged with her mother's murder in Laurel County Circuit Court." *Id.* ¶ 27. They also argue that Prudential is not entitled to attorneys' fees. *Id.* ¶ 28. They then assert a cross-claim against McFadden, seeking a judgment declaring that they (and any other appropriate heir) are entitled to Sherry Rose's death benefits, and McFadden is disqualified from receiving any such benefits. *Id.* ¶¶ 38–39.

Prudential thereafter requested and was granted additional time to serve Defendants Arlis Rose and Katherine Love due to difficulties in locating those defendants. [R. 15; R.16] Soon after, Katherine Love filed an Answer and Cross-Claim. [R. 17] Like Gary and Rick Rose, Love also argued that Prudential could not release the death benefits to McFadden and Prudential was not entitled to attorneys' fees, and she requested similar declaratory relief. *Id.* Arlis Love, who could not be located, was served by Warning Order Attorney pursuant to Kentucky Rule of Civil Procedure 4.08, but he has not filed an answer or otherwise appeared in this action. [R. 18–19; R. 23–24]

On March 25, 2020, counsel entered an appearance on behalf of Christie McFadden, [R. 26], and filed the present Motion to Dismiss, [R. 27]. McFadden argues that her mother's insurance policy and its proceeds are controlled by an employee benefit plan, and the Employee

Retirement Income Security Act ("ERISA") preempts Kentucky's Slayer Statute, KRS § 381.280. *Id.* Because the statute is preempted, she argues, she should be permitted to accept the proceeds of her mother's insurance plan as the designated beneficiary. *Id.* She therefore asks the Court to dismiss Prudential's Complaint and also asks that the life insurance benefits be distributed to her. *Id.* Thus, though she states that she seeks dismissal of the Complaint, she is also seeking dismissal of the cross-claims filed by Katherine Love and Gary and Rick Rose.

Katherine Love and Gary and Rick Rose have filed responses to McFadden's Motion. [R. 28, R. 30] They argue that, regardless of Kentucky's Slayer Statute, federal law prohibits the beneficiary of a life insurance policy from recovering the proceeds if they intentionally and feloniously take the life of the insured. [R. 28, R. 30] Prudential has also filed a response, in which it makes the following arguments: (1) McFadden's motion should be denied as untimely and procedurally improper; (2) even if the Court considers the motion, it should be denied because Kentucky's Slayer Statute is not preempted by ERISA; and (3) even if the Slayer Statute is preempted, federal common law also prohibits a person from profiting from his or her wrong. [R. 29, pp. 1–8] With its response, Prudential filed a Motion for Relief in Interpleader, essentially asking the Court to grant the relief requested in its Complaint in Interpleader. *Id.* at 9–12.

The Court will address each of the parties' arguments in turn.

## II. ANALYSIS

### A. Standard

In her Motion to Dismiss, McFadden asks the Court to dismiss Prudential's Complaint, but she does not cite to the Federal Rules of Civil Procedure to support her motion. To the extent that McFadden seeks dismissal for failure to state a claim under Rule 12(b)(6), her motion is

untimely. That rule provides that "[a] motion asserting any of [the defenses listed under Rule 12(b)] must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). McFadden, acting pro se, filed her answer on March 12, 2019 [R. 6]. She filed her Motion to Dismiss, [R. 27], on March 25, 2020, over a year after filing her response to Prudential's Complaint. Thus, her Motion to Dismiss, if considered filed under Rule 12(b)(6), would be untimely.

However, Rule 12(c) provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "The primary distinction between a motion to dismiss for failure to state a claim [under Rule 12(b)(6)] and a motion for judgment on the pleadings [under Rule 12(c)] is one of timing." *In re Brizinova*, 592 B.R. 442 (E.D. N.Y. 2018). As explained in Moore's Federal Practice,

> If the motion is filed before the answer, the court may treat it as a motion to dismiss under Rule 12(b)(6). Conversely, a motion to dismiss filed after the pleadings close will be treated as a motion for judgment on the pleadings. In fact, any distinction between [a Rule 12(b)(6) motion and a Rule 12(c) motion] is purely semantic because the same standard applies to motions made under either subsection.

*Id.* (quoting 2 Moore's Federal Practice at § 12.38).

The Sixth Circuit has explained the applicable standard for reviewing a Rule 12(b)(6) or Rule 12(c) motion as follows:

> In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 1964–65 (internal citations omitted). In *Erickson v. Pardus*, 550 U.S. ——, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), decided two weeks after *Twombly*, however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 2200 (quoting *Twombly*, 127 S.Ct. at 1964). The

> opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* (citing *Twombly*, 127 S.Ct. at 1965). We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

*Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 296 (6th Cir. 2008). Simply stated, to survive a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In assessing the pleadings on a Rule 12(c) motion, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). If the pleadings, accepted as true, present "no material issue of fact . . . and the party making the motion is entitled to judgment as a matter of law," then it is appropriate to grant the Rule 12(c) motion. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citing *Winget*, 510 F.3d at 582) (internal citation marks omitted).

In the present case, McFadden filed her Motion to Dismiss *after* filing an answer and after the pleadings had closed. Accordingly, the Court will treat her Motion to Dismiss as a Motion for Judgment on the Pleadings under Rule 12(c) (the "Motion").

**B. Preemption**

Kentucky's Slayer Statute provides,

> If the husband, wife, heir-at-law, beneficiary under a will, joint tenant with the right of survivorship or the beneficiary under any insurance policy takes the life of the decedent or victimizes the decedent by the commission of any felony under KRS

> Chapter 209 and in either circumstance is convicted therefor, the person so convicted forfeits all interest in and to the property of the decedent, including any interest he or she would receive as surviving joint tenant, and the property interest or insurable interest so forfeited descends to the decedent's other heirs-at-law, beneficiaries, or joint tenants, unless otherwise disposed of by the decedent.

KRS § 381.280(1). McFadden argues that this statute does not bar her from accepting the proceeds of her mother's life insurance policy because that policy is governed by ERISA, and ERISA expressly preempts state law, including the Slayer Statute. [R. 27] Defendants argue that ERISA does not preempt the statute and regardless, federal common law similarly prohibits McFadden from receiving the proceeds of her mother's life insurance. [R. 28, R. 29, R. 30] Thus, the Motion raises two questions: does ERISA preempt the Slayer Statute such that the statute would not bar McFadden's taking of her mother's death benefits, and, even if ERISA preempts the Slayer Statute, does federal common law prevent McFadden from taking the death benefits?

Turning to the first question, the Court finds that *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001), cited by McFadden, is not helpful to her case. In that case, the insured designated his wife as the beneficiary of his life insurance policy and pension plan, which was governed by ERISA. *Id.* at 144. The insured eventually divorced his wife and died soon after. *Id.* His children (from a previous marriage) sued to recover the insurance and pension plan proceeds, relying on a state statute that would effectively revoke the ex-wife's status as beneficiary—or in other words, disqualify her as a beneficiary—because she and the insured had divorced. *Id.* at 144–45. The Washington Supreme Court ultimately held that the state statute was *not* preempted by ERISA, finding the statute's application revoked the ex-wife's beneficiary designation. *Id.* at 145. In the absence of a named beneficiary, the children were entitled to the proceeds of the insurance policy and pension plan. *Id.*

The Supreme Court of the United States reversed. It first cited to ERISA's preemption provision, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. *Id.* at 146 (quoting 29 U.S.C. § 1144(a)) (internal quotation marks omitted). A state law "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *Id.* at 147 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983) (internal quotation marks omitted). To determine if such a connection exists, courts must consider the objectives of ERISA and the nature of the state law's effect on ERISA plans. *Id.* (citation omitted). The Supreme Court ultimately held that the state statute at issue in *Egelhoff* had a "prohibited connection with ERISA plans" because it bound "ERISA plan administrators to a particular choice of rules for determining beneficiary status" and it "interfer[ed] with nationally uniform plan administration." *Id.* at 147–48.

Critically, the Court in *Egelhoff* did not consider the application of ERISA in the context of a state slayer statute. But the Court signaled its outcome might be different if considering a state slayer statute:

> [R]espondents argue that if ERISA pre-empts this statute, then it also must pre-empt the various state statutes providing that a murdering heir is not entitled to receive property as a result of the killing. In the ERISA context, these "slayer" statutes could revoke the beneficiary status of someone who murdered a plan participant. Those statutes are not before us, so we do not decide the issue. *We note, however, that the principle underlying the statutes—which have been adopted by nearly every State—is well established in the law and has a long historical pedigree predating ERISA. And because the statutes are more or less uniform nationwide, their interference with the aims of ERISA is at least debatable.*

*Id.* at 152. The majority in *Egelhoff* suggested that ERISA would *not* preempt a state slayer statute.[1]

---

[1] In his dissent, Justice Breyer found issue with this analysis. He noted that slayer statutes also govern the payment of benefits and their details can vary from state to state, just like divorce revocation statutes. *Id.* at 159–60 (Breyer, J., dissenting). He also noted that "the 'slayer' conflict would seem more serious, not less serious, than the conflict before us, for few, if any, slayer statutes permit plans to opt out of the state property law rule." *Id.* at 160 (Breyer, J., dissenting).

At least one circuit has agreed with the *Egelhoff* Court's dicta. In *Laborers' Pension Fund v. Miscevic*, 880 F.3d 927 (7th Cir. 2018), a state pension plan brought an interpleader action to determine the proper beneficiary of the decedent's pension benefits. *Id.* at 930. The decedent had been murdered by his wife, who was found to have intentionally killed her husband but was not guilty by reason of insanity. *Id.* Under the terms of the pension plan, she would receive a monthly annuity. *Id.* The decedent's children argued that she should not receive these benefits under the state's slayer statute, and the wife argued that ERISA preempted that statute. *Id.* The Court, citing *Egelhoff*, held that ERISA does not preempt state slayer statutes. *Id.* at 932–34.

As the Seventh Circuit noted in *Miscevic*, several district courts have also considered this preemption question, and many have ultimately declined to resolve the issue, while also acknowledging that *Egelhoff* at least suggested that ERISA would *not* preempt state slayer statutes. *Id.* at 932–33 (citations omitted). A handful of district courts have expressly ruled that state slayer statutes are not preempted by ERISA. *Id.* (citing *Hartford Life & Accident Ins. Co. v. Rogers*, No. 3:13-cv-101, 2014 WL 5847548, at *2–3 (D.N.D. Nov. 12, 2014); *Union Sec. Life Ins. Co. of N.Y. v. JJG-1994*, No. 1:10-cv-00369, 2011 WL 3737277, at *2 (N.D.N.Y. Aug. 24, 2011); *Mack v. Estate of Mack*, 206 P.3d 98, 110 (Nev. 2009)); *see also New Orleans Elec. Pension Fund v. Newman*, 784 F.Supp. 1233, 1236 (E.D. La. 1992); *Mendez-Bellido v. Bd. of Trs. of Div. 1181, A.T.U. N.Y. Emps. Pension Fund & Plan*, 709 F.Supp. 329, 331 (E.D.N.Y. 1989).

Like many of those district courts that have considered this issue, this Court need not affirmatively decide whether ERISA preempts Kentucky's Slayer Statute because federal law would also prevent McFadden from taking her mother's death benefits. *See, e.g.*, *Nale v. Ford*

*Motor Co. UAW Retirement Plan*, 703 F. Supp. 2d 714, 722–23 (E.D. Mich. 2010) (explaining that the Court, like "numerous other federal courts" need not resolve the question of whether ERISA preempts state slayer statutes because neither the state's slayer statute nor the "federal common law 'slayer's rule'" allowed the beneficiary to recover); *Life Ins. Co. of North America v. Camm*, No. 4:02-cv-00106-DFH-WGH, 2007 WL 2316480 (S.D. Ind. Aug. 6, 2007) (citing district court cases in which the courts "concluded they did not need to decide whether the state slayer's statutes were actually preempted because federal common law would produce the same result as the state statutes").

The Sixth Circuit has explained the principles of federal common law that would prohibit a beneficiary from receiving the insurance benefits of an insured killed by the beneficiary:

> [P]ublic policy founded upon the equitable principle that no person should be permitted to profit from his own wrong intervenes to prevent [a beneficiary who kills the insured] from taking the proceeds of the insurance, unless the beneficiary was insane at the time, or the killing was accidental, or was committed in self-defense.

*Shoemaker v. Shoemaker*, 263 F.2d 931, 932 (6th Cir. 1959) (citations omitted). In that case, the insured was shot and killed by his wife, and the district court found that the shooting was not committed in self-defense. *Id.* The insurance policy was governed by the National Service Life Insurance Act, which had no provision for situations in which the beneficiary killed the insured. *Id.* However, given the public policy stated above, the district court did not err in denying the wife the proceeds of her husband's insurance policy. *Id.*

This Court applied the same principle in *Mounts v. United States*, 838 F.Supp. 1187 (E.D. Ky. 1993). In that case, a federal employee was shot and killed by his wife, who was later convicted of reckless homicide. *Id.* at 1188. The wife was the named beneficiary in the decedent's Federal Employees Group Life Insurance Act ("FEGLIA") insurance policy. *Id.* The

decedent's children filed suit, seeking to recover the life insurance benefits, as well as the decedent's pension benefits. *Id.* They argued that the wife's conviction for reckless homicide "operate[d] as a matter of law to forfeit any rights she might have" to the benefits. *Id.* at 1192. They also argued that Kentucky's Slayer Statute barred the wife from receiving the life insurance proceeds. *Id.* at 1194. The Court considered this argument but held that FEGLIA's preemption clause "preempts any conflicting state statute or regulation; therefore, KRS 381.280 is not relevant in determining the recipient of the FEGLIA benefits." *Id.* However, citing *Shoemaker*, the Court explained why the wife could not receive the insurance benefits under federal common law:

> [T]he fact that [the wife] was convicted of reckless homicide in causing the death of her husband . . . operates as a matter of federal law to forfeit her right to these FEGLIA benefits, because it is well settled that "no person should be permitted to profit from his own wrong."

*Id.* (quoting *Shoemaker*, 263 F.2d at 932).

The reasoning in *Mounts* is equally applicable here. Accordingly, under either the Kentucky Slayer Statute or federal common law, it is possible that McFadden will be prohibited from receiving the proceeds of her mother's life insurance policy. Under Kentucky's Slayer Statute, she forfeits her interest as a beneficiary if it is proven that she took the life of her mother "by the commission of any felony under KRS Chapter 209" and is "convicted therefor." KRS § 381.280. Even if that statute is preempted by ERISA, she would be prohibited from taking the death benefit under federal common law if it is proven that she killed her mother and the killing was not the product of her own insanity, an accident, or committed in self-defense. *See Shoemaker*, 263 F.2d at 932.

With these rules in mind, the Court turns to the standard for deciding a Rule 12(c) motion for judgment on the pleadings. As noted above, if the pleadings, accepted as true, present "no

material issue of fact . . . and the party making the motion is entitled to judgment as a matter of law," then it is appropriate to grant the Rule 12(c) motion. *Tucker*, 539 F.3d at 549 (citing *Winget*, 510 F.3d at 582) (internal citation marks omitted). In this case, the Complaint in Interpleader alleges that McFadden "was criminally charged in connection with the Insured's murder." [R. 1, ¶ 14] The cross-claims of Defendants Gary Rose, Rick Rose, and Katherine Love allege that McFadden was charged with her mother's murder and the criminal matter remains pending in Laurel Circuit Court. [R. 10, ¶ 36; R. 17, ¶ 4] McFadden disputes these allegations in her Answer, [R. 6]. She argues that she has not been charged with or convicted of her mother's murder, though she acknowledges the pending criminal matter and charges for complicity. *Id.*

Accepting the allegations in the pleadings of the non-moving parties as true, the Court cannot find that McFadden is entitled to judgment as a matter of law. A material issue of fact remains regarding whether McFadden feloniously killed her mother such that she would be barred from receiving her death benefits. Notably, the parties do not ask the Court to look beyond the pleadings at this stage, and they have not provided any evidence of McFadden's conviction or acquittal. In fact, the pleadings indicate that the criminal matter is still pending, and they contain competing assertions about McFadden's involvement in her mother's homicide. Considering only the pleadings for purposes of the Motion, the Court finds that there are material issues of fact in dispute.

Because the pleadings demonstrate the existence of disputed material facts, and discovery (and time) is needed to resolve that factual dispute, neither party is clearly entitled to relief as a matter of law at this time. It would therefore be inappropriate to grant McFadden's Motion for Judgment on the Pleadings, [R. 27].

### C. Relief in Interpleader

In its response to McFadden's motion, Prudential incudes a "Cross-Motion for Relief in Interpleader." [R. 29, pp. 9–12] It asks the Court to enter an order directing Prudential to deposit the death benefit with the Court's Registry, then dismiss Prudential and enjoin the defendants from prosecuting any actions for payment of the death benefit in any other forum. *Id.* at 11. It also seeks attorneys' fees and costs. *Id.* at 11–12. This is the same relief requested in Prudential's Complaint in Interpleader [R. 1].

Defendants did not file responses to Prudential's Cross-Motion, but Gary Rose, Rick Rose, and Katherine Love each addressed Prudential's claim for attorneys' fees in their answers. These defendants argued that Plaintiff is not entitled to an award of attorneys' fees. [R. 10, ¶ 28; R. 17, ¶ 14] They argue,

> Plaintiff seeks a determination from this Court rather than awaiting the determination of the Laurel County Circuit Court concerning the alleged murder of the decedent and Christie McFadden's responsibility therefor. As such, Plaintiff is not entitled to shift the cost of making that determination onto the beneficiaries by seeking attorneys' fees in this action.

[R. 10, ¶ 28; R. 17, ¶ 14] They do not otherwise object to the Complaint's requested relief.

Under Federal Rule of Civil Procedure 22, "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). "Interpleader is an equitable proceeding that 'affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding.'" *United States v. High Technology Products, Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (quoting 7 Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and

Procedure § 1704 (3d ed. 2001)). The Sixth Circuit has explained the two-step process for such claims:

> An interpleader action typically proceeds in two stages. During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader. During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial.

*Id.* (internal citations omitted). "When the court decides that interpleader is available"—typically, at the conclusion of the first stage—"it may issue an order discharging the stakeholder, if the stakeholder is disinterested, enjoining the parties from prosecuting any other proceeding related to the same subject matter, and directing the claimants to interplead." *Id.* (quoting 7 Wright, Miller, & Kane, at § 1714) (internal quotation marks omitted). In most interpleader actions, "a disinterested stakeholder would deposit with the court the fund or property at issue and be discharged from further liability during the first stage of the action, before the court determined the relative possessory and ownership rights of the parties and distributed the fund or property." *Id.* at 641 n.2.

This interpleader action is presently in the first stage. The Court must therefore determine if interpleader is appropriate. Prudential argues that interpleader is appropriate because McFadden may be disqualified as a beneficiary (under either Kentucky's Slayer Statute *or* federal common law, as explained above), in which case the insured's siblings should receive the death benefits. [R. 29, p. 9] Prudential contends that, "[a]s a result of that uncertainty and the competing claims asserted by the Defendants, Prudential is unable to determine the proper payee(s)." *Id.*; *see also* [R. 1, ¶ 22] The Court agrees that interpleader is appropriate under these circumstances and finds no equitable concerns compelling against interpleader. If Prudential

cannot determine the proper beneficiary, it risks distributing the death benefits to the "wrong" beneficiary, thereby exposing it to potential lawsuits from the other potential beneficiaries. Under these circumstances, in which there are competing claims to an ERISA benefit and Prudential is exposed to potential liability, interpleader is appropriate. *See Humana Ins. Co. of Kentucky v. O'Neal*, 727 Fed. App'x 151, 155 (6th Cir. 2018) ("We have repeatedly authorized use of the interpleader process where there are competing claims to an ERISA benefit." (citing *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 (6th Cir. 1997))).

Having determined that interpleader is appropriate the Court may now issue an order discharging Prudential (if Prudential is disinterested), enjoining the parties from prosecuting any other proceeding related to the distribution of these benefits, and directing them to interplead. *High Technology Products,* 497 F.3d at 641. Prudential asserts that it is a disinterested party because it is fully willing to pay the death benefit and it "has no interest in how this Court ultimately determines" the rights of the defendants. [R. 29, p. 11; R. 1, ¶ 24] The Court agrees that Prudential is disinterested and will discharge it from this suit. It will also enjoin the parties from prosecuting any other proceedings related to the subject matter of this suit. Defendants Love and Gary and Rick Rose have already asserted counterclaims against McFadden, who has asserted a right to the death benefits. Prudential will be ordered to deposit the death benefit amount in full to this Court's Registry, and the Court will distribute it at the conclusion of "stage two" of this interpleader action.

Prudential also requests attorney's fees and costs. Rule 22 does not contain an express reference to attorney's fees or costs, but "[a] federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action, whether brought under Rule 22 or the interpleader statute, whenever it is fair and equitable to do so." *Holmes v. Artists Rights*

*Enforcement Corp.*, 148 Fed. App'x 252, 259 (6th Cir. 2005) (quoting 7 Wright, Miller, & Kane, Federal Practice and Procedure § 1719 (3d ed. 2001)) (internal quotation marks omitted). In fact, awarding attorneys' fees and costs to a disinterested stakeholder-plaintiff is the "general rule" under federal law. *Unum Life Ins. Co. of Am. v. Kelling*, 170 F. Supp. 2d 792, 793 (M.D. Tenn. 2001) (citing *Mutua Life Ins. Co. v. Bondurant*, 27 F.2d 464, 465 (6th Cir. 1928); *In re Creekstone Apartments, L.P.*, 165 B.R. 851, 855 (Bkrtcy. M.D. Tenn. 1994)). As the Sixth Circuit has explained, "[a]n interpleading party is entitled to recover costs and attorney's fees when it is (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." *Holmes*, 148 Fed. App'x at 259 (citing *Septembertide Publishing v. Stein and Day*, 884 F.2d 675 (2d Cir. 1989)); *see also First Trust Corp. v. Bryant*, 410 F.3d 842, 855–56 (6th Cir. 2005). "The only limiting principle is reasonableness, and it is at the discretion of the Court to determine what award is appropriate." *Holmes*, 148 Fed. App'x at 259 (citation omitted).

In this case, Prudential is a disinterested party, as explained above, and it concedes that it is liable for the death benefit. [R. 1, ¶ 23; R. 29, p. 12] The Court, for the reasons stated above, will order Prudential to deposit the death benefit funds into the Court's Registry and will discharge Prudential from liability related to the distribution of the funds. Accordingly, all four factors are (or soon will be) satisfied.

Furthermore, the Court finds the arguments of Katherine Love and Gary and Rick Rose to be without merit. Those parties argue that Prudential is not entitled to attorneys' fees and costs because it could just wait until McFadden's criminal charges have been resolved. [R. 10, ¶ 28; R. 17, ¶ 14] However, even if it had waited for a conviction (or acquittal) in that case, Prudential would have exposed itself to multiple lawsuits had it decided to award benefits to either

McFadden or the insured's siblings. *See Kelling*, 170 F. Supp. 2d at 794 ("Regardless of the legitimacy of any of the three competing claims, Unum would still potentially be subject to multiple lawsuits if they had made a decision to award benefits to only one of the claimants."). This is made clear by the defendants' own pleadings, which dispute the application of the Kentucky Slayer Statute. "Such a situation is precisely what the interpleader statute is intended to resolve." *Id.* Further, Prudential "clearly had no interest in which of the competing claimants received the fund paid into the Court. [It] made no claim to the policy and did not dispute the amount of the policy. By submitting the fund to this Court, [Prudential] preserved it for the benefit of the successful claimant." *Id.* The Court therefore finds that Prudential likely falls into the "general rule" that a disinterested shareholder-plaintiff should be granted attorneys' fees and costs.

However, there are exceptions to that general rule. *Id.* at 794–95. First, courts have found "that insurance companies should not be compensated merely because conflicting claims to proceeds have arisen during the normal course of business." *Id.* at 794 (citations omitted). In addition, "courts have exempted insurance companies from the general rule and denied them an award of attorneys' fees because insurance companies, by definition, are interested stakeholders; filing the interpleader action immunizes the company from further liability under the contested policy." *Id.* (citations omitted). Lastly, "courts have exempted insurance companies from the general rule based on the policy argument that such an award would senselessly deplete the fund that is the subject of preservation through interpleader." *Id.* at 795 (citations omitted). The Court will reserve ruling on the applicability of any of these exceptions until after it has received an accounting of Prudential's attorneys' fees and costs.

### III. CONCLUSION

For the reasons stated above, the Court will deny McFadden's Motion for Judgment on the Pleadings, [R. 27], and will grant Prudential's Cross-Motion for Relief in Interpleader, [R. 29].

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Christie McFadden's Motion to Dismiss, construed as a Motion for Judgment on the Pleadings, [**R. 27**], is **DENIED**.

2. Prudential's Cross-Motion for Relief in Interpleader, [**R. 29**], is **GRANTED**.

3. Prudential **SHALL**, within **21 days** of the entry of this Order, tender the death benefit, plus applicable claim interest, if any, to the Clerk of Court by check made payable to Clerk, U.S. District Court.

4. Pursuant to Fed. R. Civ. P. 67, the **Clerk of Court SHALL** deposit the interpleader funds into the United States Treasury to be invested in the Court Registry Investment System ("CRIS") Disputed Ownership Fund ("DOF"), the investment management tool of the Administrative Office of the Courts.

5. Interpleader funds deposited under 28 U.S.C. § 1335 meet the Internal Revenue Service ("IRS") definition of a Disputed Ownership Fund, a taxable entity that requires tax administration. Accordingly, these funds **SHALL** be deposited in the DOF established within the CRIS, which is administered by the Administrative Office of the Courts and responsible for meeting all DOF tax administration requirements.

6. The interpleader funds **SHALL** be placed in interest-bearing accounts in the name of the "Clerk of the Court of the United States District Court for the Eastern District of Kentucky, Civil Action No. 6:19-cv-51-CHB."

7.      The funds deposited with the Court Registry Investment System **SHALL** remain on deposit until further order of the Court.

8.      Within **21 days** of the entry of this Order, Prudential **SHALL** supplement its request for attorneys' fees and costs by providing an accounting of its requested attorneys' fees and costs. Prudential **SHALL** also address the applicability of any exceptions to the general rule permitting an award of attorneys' fees and costs, as outlined in *Kelling*, 170 F. Supp. 2d at 794. Defendants may file a response within **14 days** of the filing of Prudential's supplemental filing, after which the issue shall stand submitted to the Court.

9.      Upon completion of these directives, the Court will enter a separate order discharging Prudential from liability in connection with the disbursement of the death benefit and enjoining Defendants from making any further claims for benefits against Prudential and from pursuing other action against Prudential arising out of the disbursement of the death benefit under the policy at issue.

10.     Within **21 days** of the entry of this Order, Defendants **SHALL** file a joint status report related to the status of the pending criminal action in Laurel Circuit Court. If the parties cannot agree on a joint report, they may file separate status reports.

This the 3rd day of December, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY